**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

GLOBAL ADVANCED TECHNOLOGIES,
INCORPORATED,
              *Plaintiff-Appellee,*

              v.

JOHN B. ROSS,
              *Defendant-Appellant,*
              and

RICHARD BISSELL; ELAINE L.
WEINSTEIN; WARREN WEINSTEIN;
PERSEU SANTOS,
              *Defendants.*

No. 00-1218

GLOBAL ADVANCED TECHNOLOGIES,
INCORPORATED,
              *Plaintiff-Appellant,*

              v.

JOHN B. ROSS,
              *Defendant-Appellee,*
              and

RICHARD BISSELL; ELAINE L.
WEINSTEIN; WARREN WEINSTEIN;
PERSEU SANTOS,
              *Defendants.*

No. 00-1319

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-98-1556-A)

Argued: April 2, 2002

Decided: April 23, 2002

Before WILKINSON, Chief Judge, KING, Circuit Judge, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Donna Haynes Henry, HENRY & O'DONNELL, P.C.,
Fairfax, Virginia, for Appellant. James E. Etri, BAKER & MCKEN-
ZIE, Dallas, Texas, for Appellee. **ON BRIEF:** Kevin M. O'Donnell,
HENRY & O'DONNELL, P.C., Fairfax, Virginia, for Appellant.
Brian J. Hurst, BAKER & MCKENZIE, Dallas, Texas; John W. Polk,
BAKER & MCKENZIE, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Defendant John Ross and two other investors negotiated to pur-
chase Intelligent Monitoring Systems, Inc. ("IMS") from Global
Advanced Technologies, Inc. ("GAT"). After GAT failed to receive
payments required under the purchase agreement, it brought suit
against Ross and the other investors for, *inter alia*, civil conspiracy.
Ross appeals the jury verdict finding him and the other investors lia-
ble for civil conspiracy and awarding damages in the amount of
$6,049,990. We affirm.

## I.

Plaintiff Global Advanced Technologies, Inc. is a Texas corporation with its principal place of business in Las Cruces, New Mexico. Elisabeth Zocchio owned 75% of GAT, and Dr. Perseu Santos, a director of GAT, owned 25%. GAT, in turn, owned 63% of the stock in Intelligent Monitoring Systems, Inc., a New Mexico corporation involved in developing devices to detect bacteria and other contaminants in water samples. GAT operated IMS while it was in the research and development stage. However, once IMS' products were viable, GAT decided to sell IMS to a purchaser who had the capability to successfully produce and market IMS' products. Santos had expressed interest in purchasing and/or operating IMS, but Zocchio did not feel he had the necessary financial and managerial skills. Therefore, GAT authorized Santos to seek out a purchaser for IMS who had the required skills.

In 1994, Santos approached defendant John Ross about purchasing IMS. Ross was interested, so he formed an investment group (the "Ross defendants") with two other executives, Richard Bissell and Warren Weinstein, for the purpose of purchasing IMS. Santos represented to Zocchio that the Ross defendants had the ability to produce and market IMS' products, so GAT entered into negotiations with them for the sale of IMS.

In May 1995, unbeknownst to Zocchio, the Ross defendants had decided to have Santos help manage IMS. In order to entice Santos to manage IMS and reward him for future work, the Ross defendants promised Santos, in writing, the option to obtain 49% of IMS' stock in five years (the "Option Letter"). The Option Letter stated that Santos' right to obtain the stock was contingent upon GAT having been paid in full for the IMS stock and Santos devoting 50% of his time to IMS during the five-year period.

One month later, the Ross defendants sent GAT a letter of intent to purchase GAT's IMS stock. GAT's attorneys then began working with Ross on the deal documents. In September 1995, Ross RWB & Associates, Inc. ("RWB") was incorporated to purchase the IMS stock. Ross, Bissell, and Elaine Weinstein, Warren Weinstein's wife, were the shareholders of RWB. A final agreement, setting a sale price

of $6,299,990, was signed in October and November 1995 (the "Sales Agreement"). The Sales Agreement required an initial payment of $250,000 and the remaining balance due was to be paid in five annual installments. The IMS stock would be held in escrow by GAT's attorneys and released *pro rata* as payments were made. The down payment of $250,000 was paid in February 1996. Zocchio claims she was unaware that the Option Letter existed at this point, and she contends she would not have sold IMS to the Ross defendants if she had known about the letter.

IMS' products did not sell as well as expected and Santos assembled a group of investors to buy-out RWB. This group formed a corporation named Totah Resource Management, Inc. ("TRM"). On January 28, 1996, unbeknownst to GAT, RWB sold itself to TRM. TRM took over RWB's obligations to GAT including the obligation to pay for the IMS stock. GAT claims this was part of a scheme to transfer IMS to Santos.

Subsequently, TRM failed to make the installment payments required under the Sales Agreement. When the TRM transaction first took place, Santos had requested that Ross not reveal the TRM transaction to Zocchio. However, when Ross spoke with Zocchio after TRM defaulted on the payments, he told her that RWB had been sold to TRM. Soon thereafter, Santos became ill and "disappeared." In May 1999, Santos was indicted for embezzlement from GAT on an unrelated matter by a New Mexico state court.

On October 26, 1998, GAT filed an action against the Ross defendants, Elaine Weinstein, and Santos alleging breach of contract, alter ego breach of contract, several fraud claims, and civil conspiracy. Santos filed an answer to GAT's complaint, but never again appeared in court in this case. The district court dismissed the breach of contract, alter ego breach of contract, and fraud claims.[1] The remaining count against the Ross defendants, the civil conspiracy claim, then went to trial.

At trial, GAT contended that the Ross defendants and Santos conspired to breach Santos' fiduciary duties to GAT by keeping crucial information relating to the Option Letter and the subsequent sale of

---

[1]The district court granted summary judgment in favor of Elaine Weinstein on all counts and she is not a party to this appeal.

IMS to TRM, a Santos controlled entity, from GAT and Zocchio. After a three day trial, the jury returned a verdict in GAT's favor against the Ross defendants and Santos, and awarded compensatory damages in the amount of $6,049,990 for which the defendants are jointly and severally liable. Ross appeals.[2]

## II.

In an ordinary case, a principal bears the risk of a choice of agent and the party dealing with the agent is entitled, in turn, to assume that the agent will deal in good faith with the principal. Here, however, the jury was entitled to find that the elements of a civil conspiracy were met. The Ross defendants and Santos conspired at every turn to conceal the most critical facts of the IMS transaction from Zocchio. It was clear from the evidence presented at trial that Santos and the Ross defendants knew that GAT's decision to sell hinged on who would run IMS because the Ross defendants were going to pay GAT out of IMS revenues. It was further evident that Zocchio would never have signed the Purchase Agreement if the terms of the Option Letter had been disclosed to her, or if she had known Santos would be managing IMS which it was agreed he was incapable of doing. Yet, Santos' role in the transaction and in IMS was precisely the thing Santos and the Ross defendants conspired to keep secret from Zocchio and GAT. Equally telling is that after the initial sale of IMS to the Ross defendants, the Ross defendants sold IMS to TRM, a Santos controlled entity. Under the circumstances, there was sufficient evidence from which the jury could conclude that a conspiracy had been committed.[3] Accordingly, we affirm the judgment.

*AFFIRMED*

---

[2]On August 25, 2000, the proceedings in this court were stayed due to the bankruptcies of the Ross defendants. Subsequently, Bissell and Weinstein settled with GAT and were dismissed as parties to this appeal. By order of the United States Bankruptcy Court for the Eastern District of Virginia, the automatic stay of 11 U.S.C. § 362 was modified to permit this appeal by Ross.

[3]Ross contested the jury's damages finding as well as the liability finding. We find there is sufficient evidence in the record to support the damage award.